# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ELIZABETH LAUBER and JAIME YANEZ
on behalf of themselves and a class consisting
of all of those similarly situated,
and CARRIE McCLUSKEY,

      Plaintiffs,

v.

BELFORD HIGH SCHOOL, BELFORD UNIVERSITY,
EDUCATION SERVICES PROVIDER, INC.,
INTERNATIONAL ACCREDITATION AGENCY FOR
ONLINE UNIVERSITIES, UNIVERSAL COUNCIL FOR
ONLINE EDUCATION ACCREDITATION,
ZUNCH WORLDWIDE, INC., ZUNCH CHINA, INC.,
MELVILLE P. CROWE, DAN ROBERTSON,
SYDNEY GOLDSTEIN, KEN CALVERT,
WILLIAM J. McTIERNEN, SALEM KURESHI
and JOHN DOES 1-35,

      Defendants.

Case No. 4:09-cv-14345-MAG-MKM

Hon. Mark A. Goldsmith

_____/

**THE MILLER LAW FIRM, P.C.'S SUPPLEMENTAL MEMORANDUM
IN RESPONSE TO ORDER TO SHOW CAUSE
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(c)(3)</u>**

The Miller Law Firm, P.C., by its attorneys Fink + Associates Law, submits this supplemental memorandum in support of its response to the order to show cause pursuant to Federal Rule of Civil Procedure 11(c)(3). At the conclusion of the September 8, 2011 hearing, the Court requested supplemental briefing on the following issues: (1) the extent to which the Court's determinations should be affected because the Rule 11 issues are raised by an order to show cause under Rule 11(c)(3), rather than a motion under Rule 11(c)(2); (2) whether there is a materiality requirement under Rule 11; and (3) the range of sanctions that a court may impose.

### A. A Show Cause Order Under Rule 11(c)(3) Differs Fundamentally From A Motion Under Rule 11(c)(2)

There is a fundamental difference in the way Rule 11 deals with motions for sanctions filed by an adverse party under Rule 11(c)(2) as opposed to issues raised by the Court's own show cause order pursuant to Rule 11(c)(3). Under Rule 11(c)(2), there is a safe harbor for non-moving parties, but no such safe harbor exists under Rule 11(c)(3). "In recommending the 'safe harbor' provision [under Rule 11(c)(2)], the rule-makers explicitly noted its unavailability for sanction proceedings initiated by a court and expressed their view that, as a result, **court-initiated sanction proceedings would be used only in more egregious circumstances**." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89-90 (2d Cir. 2003) (emphasis added). The 1993 Advisory Committee Notes to Rule 11 specifically recognize that "show cause orders will ordinarily be issued only in situations that are akin to a contempt of court . . ." Thus, under Rule 11(c)(3), courts are "obliged to use extra care" in imposing *sua sponte* sanctions. *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002); *see also United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1118 (9th Cir. 2001) (while court "had every reason to disapprove of the manner in which Counsel presented information to the district court," the statements at issue were "in neither purpose nor substance 'akin to contempt.'"); *see also In re Pennie, supra at* 90 ("Courts have taken the Advisory Committee's note

to mean that *sua sponte* Rule 11 sanctions must be reviewed with 'particular stringency.'").

The Sixth Circuit is similarly guided by the 1993 Advisory Committee Notes. In *Wesely v. Churchill Devel. Corp.*, 1996 WL 616636 (6th Cir. 1996) (*per curiam*), the Court held that issuing *sua sponte* sanctions in connection with defense counsel's preparation of three affirmative defenses was an abuse of discretion, because the conduct at issue was not "akin to a contempt of court." *Id.* at *3. The attorney asserted three affirmative defenses, without ever speaking to his client, that the district court characterized as "frivolous," "wholly frivolous," and "thoroughly devoid of merit," respectively. *Id.* at *1. The Sixth Circuit noted that "it appears that the district court's rulings are as much a criticism of [defendant's] semantics as an attack on improper pleadings."[1] *Id*. Other courts within this Circuit have likewise declined to issue sanctions under Rule 11(c)(3) because the attorney's conduct did not rise to the level of contempt. *See, e.g.*, *Own Capital, L.L.C. v. Johnny's Enterprises, Inc.*, 2011 WL 612057 (E.D. Mich. 2011); *Two Men and a Truck/International Inc. v. Two Men and a Truck/Kalamazoo, Inc.*, 1996 WL 740540 (W.D. Mich. 1996).

Since *sua sponte* sanctions under Rule 11(c)(3) are akin to contempt, the Court can look to the standard applicable to contempt sanctions to assess whether sanctions are appropriate here. A high standard applies a finding of contempt: "[A] party may only be held in contempt of a court order if (1) the order clearly and unambiguously imposed an obligation on the party; (2) proof of the party's noncompliance with the order was clear and convincing; and (3) the party did not diligently attempt to comply with the order"). *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 504 (6th 2000), *citing EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d

---

[1] The Court did uphold sanctions in connection with an improper denial, which was due to the fact that the defendants' attorney answered the complaint without first speaking to his client. *Id.* at *1-2. Instead, his investigation relied solely on discussions with the insurance carrier of the client. Here, in contrast, counsel repeatedly sought and received information directly from Belford, including Mr. Kureshi's sworn declaration, which provided a reasonable basis for counsel to believe that Belford had a real, meaningful presence in Panama.

1172, 1178 (2d Cir.1985), *aff'd* 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986). Here, The Miller Law Firm did not violate any Court orders. Rather, counsel mistakenly believed its client and zealously (in retrospect, perhaps too zealously), defended the claims brought against Belford.

Not only did The Miller Law Firm not violate any order, after the Show Cause Order was issued, it engaged in significant corrective action. While Rule 11(c)(3) does not include a safe harbor, the Advisory Committee Notes to the 1993 Amendment explain that the Court should consider the remedial efforts of counsel before imposing a sanction:

> [C]orrective action . . . should be taken into account in deciding what--if any--sanction to impose if, after consideration of the litigant's response, the court concludes that a violation has occurred.

In *Wesely*, the Sixth Circuit held that the district court abused its discretion in granting sanctions by refusing to consider the possibility of remedial action by counsel to correct the pleadings:

> More importantly, not only did the court not take into account the possibility of corrective action, it expressly ruled out such an option prior to the receipt of Cubar's response. Although perhaps not a violation of the letter of Rule 11, the refusal to allow amendment or withdrawal of objectionable defenses is most certainly a violation of the spirit of the rule, as expressed in the advisory committee notes. **By refusing to entertain withdrawal or correction, the district court abused its discretion.** *Id.* at *3. (emphasis added).

Here, The Miller Law Firm vigorously pursued remedial measures. After the Court raised the Rule 11 issue, counsel engaged in extraordinary remedial efforts to correct any arguable deficiency in its Answer to the Second Amended Complaint.

Beyond correcting that Answer, The Miller Law Firm took further steps to clarify the issue of whether a physical school building exists, culminating in counsel obtaining Belford's consent to admit that no building exists housing Belford or a physical campus and that the building depicted on its web site does not exist. (Amended Answer, Docket No. 163, at ¶89). Counsel went much further in persuading Belford to stop denying critical material facts – i.e., whether Belford has valid

3

accreditation and whether members of Belford's so-called honorary faculty exist. Those facts were not at issue in the Show Cause but are central issues in the case.

In the end, counsel filed an Amended Answer and a Stipulation. These actions were prompted in part because, shortly after the Show Cause Order was issued, counsel insisted on speaking with Mr. Dilawar Haq, whom Belford had at all times represented was Belford's contact at its purported vendor, International Resource Consultants ("IRC"). Previously, it was reported to counsel that Mr. Haq refused to cooperate with Belford in defending this case, despite numerous efforts to obtain his cooperation. Counsel insisted that Mr. Kureshi go to Mr. Haq's house and put him on the phone. After speaking with an individual who held himself out as Mr. Haq, counsel reached a "tipping point" and concluded that Belford could not continue to deny certain of Plaintiffs' allegations in this case. Thus, on August 9, counsel obtained Belford's consent to agree to enter into a Stipulation admitting that Belford could no longer deny that it does not have any faculty, honorary or otherwise, and stating that it can no longer rely on forms allegedly signed by purported faculty members. (August 9, 2011 Corrected Stipulation Resolving Motion to Compel, Docket No. 160). Later, counsel obtained Belford's consent to file an Amended Answer acknowledging that it no longer had a reasonable basis to deny Plaintiffs' allegations related to Belford's purported accreditation. (Amended Answer, Docket No. 163, at ¶87). All of these remedial measures, which went far beyond the issues in the Show Cause and addressed the critical issues in the case, should be considered in determining whether counsel's actions were "akin to a contempt."

    **B.**    **While Materiality May be Relevant to the Rule 11 Analysis**
                **It Is Not A Precondition To Rule 11 Sanctions**

In preparing for the hearing on the Show Cause Order on September 8, counsel for The Miller Law Firm met with the The Miller Law Firm's retained ethics counsel, and, based on that meeting, believed that Rule 11 includes a materiality requirement. In fact, Michigan Rule of

4

Professional Conduct 3.3(a)(1), which precludes a lawyer from knowingly making a false statement to a tribunal, is expressly limited to statements "of material fact or law." While the criteria applicable to Rule 11 and to MRPC 3.3(a)(1) are similar, they are not identical, and Rule 11 does *not* reference materiality. The Miller Law Firm has been able to locate only one case specifically addressing "materiality" under Rule 11. In *Boyce-Idlett v. Verizon Corporate Services Corp.*, 2007 WL 3355497 (S.D.N.Y. Nov. 6, 2007) a Magistrate Judge in the Southern District of New York found that materiality of a false statement is *not* an element of Rule 11. The conduct at issue in *Boyce-Idlett* is markedly different than the case at bar.[2]

Despite *Boyce-Idlett*, materiality may still be important in the Court's analysis. Absent a calculated and deliberate misrepresentation by counsel – which is never acceptable – the reasonableness of counsel's investigation before filing a responsive pleading should be evaluated in light of the materiality of the subjects addressed.[3] The more central the issue to the case, the more intensive a "reasonable" investigation would be. An allegation that adds "color" to a Complaint does not mandate the same level of inquiry as an allegation central to a necessary element of a claim.

Rule 11 requires that conduct be objectively reasonable **under the circumstances**, *see In re Big Rapids Mall Associates*, 98 F.3d 926, 930 (6th Cir. 1996). In conducting this inquiry, the district court must "avoid using the wisdom of hindsight and should test the signor's conduct by inquiring

---

[2] In *Boyce-Idlett*, the plaintiff filed a *pro se* complaint, then retained counsel. The copy of the complaint that had been served on the defendant after counsel was retained was altered from the original filed with the court. Counsel claimed the discrepancies were due to oversight and were not material, but Magistrate Fox disagreed, holding that the standard is whether it was "objectively reasonable for counsel to act as they did under the circumstances, not whether the representation, lacking evidentiary support, amounted to a material oversight." *Id.* at *6. The magistrate also noted: "Rule 11 neither imparts such discretion to the signer nor makes the materiality of a factual contention a criterion for subjecting the signer to the requirements of Rule 11." *Id.*

[3] Regardless of what Belford itself knew, nobody has argued or even suggested that The Miller Law Firm knowingly misrepresented facts to the Court.

5

what was reasonable to believe **at the time the pleading, motion or other paper was submitted**." *Id.* (citation and quotation omitted, emphasis added). Rule 11 asks whether a reasonable attorney standing in the shoes of The Miller Law Firm would have acted in a similar fashion, and thus whether the contentions at issue were critical enough to compel counsel not to accept their client's representations. The crux of the case has always been whether Belford was accredited—a subject not addressed in Paragraphs 86-88 of the Second Amended Complaint.[4] If Belford had valid accreditation but no physical school building, there would be no case, because the Plaintiffs would have received the benefit of their bargain—an online accredited diploma without attending classes. Conversely, if Bedford had a physical campus, with classrooms and thousands of students, but no accreditation, every one of Plaintiffs' claims could survive. The Miller Law Firm believed in good faith that the facts supporting Belford's denials of paragraphs 86-88 were accurate at the time that this pleading was signed.[5] Counsel's denials were not unreasonable under the circumstances, based on its good faith belief that its client had a real, meaningful and substantial presence in Panama, and that Belford's website boasted that Belford does not hold classes at a physical location.

If this Court finds that Belford's responses about its physical location were improper, counsel should not be sanctioned, because it believed them in good faith and had no reason to disbelieve them at the time the answer was filed. Throughout the case, Belford represented to counsel that

---

[4] Indeed, Plaintiffs' proposed class representatives both acknowledged that the basis of their claims against Belford was that Belford sold them diplomas that they believed to be accredited. (*See, e.g.*, **Ex. 1**, Yanez Dep. Tr., at 21:23-22:7; *see also* **Ex. 2**, Lauber Dep. Tr., at 18:6-8). Neither of the proposed class representatives was interested in a building or going to a physical campus. (**Ex. 1**, Yanez Dep. Tr., at 37:3-12; **Ex. 2**, Lauber Dep. Tr., at 71:18-20).

[5] The Federal Rules of Civil Procedure do not require that an answer be amended to correct a statement that, while believed to be true at the time, is later discovered to be false. *See* Advisory Committee Notes to the 1993 Amendment ("Subdivision (b) does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses").

Belford had some physical presence in Panama, including in Mr. Kureshi's affidavit dated August 19, 2010 (**Ex. 3**, Kureshi Declaration, at ¶3), and throughout February and May, 2011. Belford also periodically supplied counsel with documents purporting to prove that Belford was based in Panama. (*See, e.g.*, **Ex. 4**, Panama Registration Certificate of OGLE; **Ex. 5**, Letter from Edgar Gonzales of Vircen Internacional). Based on counsel's knowledge at the time of answering the Second Amended Complaint and significantly thereafter, counsel believed that Belford had a real, substantial physical presence in Panama, and thus, it was reasonable to deny the allegations about Belford's apparent building.[6] More to the point, while the client persisted in asserting these facts, nothing about its Panama presence seemed key to the case and there was no apparent reason for the client to lie.

While Belford continued to claim its presence in Panama throughout 2010 and into 2011, counsel began to be suspicious and was careful not to perpetuate a potential falsehood maintained by their client. Toward the end of 2010, counsel expressly changed the language used in court filings and other papers from "located in Panama," which was previously used, to "Panama-based." This conduct was consistent with counsel's duties under Rule 11. The Advisory Committee Notes state:

> [I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention. Subdivision (b) does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses.

---

[6] "Where a party misleads an attorney as to facts or the purpose of the lawsuit, but the attorney nevertheless had an objectively reasonable basis to sign the papers in question, then sanctions on the party alone are appropriate." *Sussman v. Salem, Saxon and Nielsen, P.A.*, 150 F.R.D. 209, 213 (M.D. Fl. 1993); *see also Friedgood v. Axelrod*, 593 F.Supp. 395, 397-98 (S.D.N.Y. 1984) (declining the invitation to impose Rule 11 sanctions against plaintiff's attorney, holding, in part, that he "was not required to disbelieve his own client and dismiss the case just because . . . defendants' attorney showed him unauthenticated photographs and blueprints casting doubt on the integrity of the representations made by his client to him."). *See also Big Rapids Mall Associates*, *supra* (district court abused its discretion in sanctioning attorneys because the sanction essentially imposed vicarious liability for the perceived unreliability of their clients' testimony: "The lack of credibility of the Debtor's principals, while a basis for sanctions against the principals cannot, without more, serve as a basis for an award of sanctions against appellants."). *Id.* at 932.

7

*See also Runfola & Associates, Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 373-74 (6th Cir. 1996) (approving that "the gravamen of Rule 11 as being not in the filing of a claim that eventually proves to be meritless, but rather in the persistence in pursuing that claim after the pleader has or should have become aware that it lacks merit."). Belford's original denials had objective support. But, once counsel began to question whether some of its client's statements were fully accurate,[7] counsel was careful not to perpetuate those factual claims, despite Belford's persistence. At no point in this case did counsel make any affirmative statement that Belford had a physical school building.

At the September 8 hearing, the Court inquired whether misstatements were made about Belford's Panama presence in discovery. The Court also asked whether the fact that Plaintiffs pursued this issue in discovery rendered it "material." During discovery, The Miller Law Firm did not make any affirmative representations that Belford had a physical campus or a school building.[8] Rather, it stated that Belford had an *office* in Panama. The independent factual bases for this statement were the Panama articles of incorporation and a letter from Belford's Panama landlord.

Plaintiffs served a notice of inspection, to conduct an inspection on February 1, 2011.[9] In response, on January 21, 2011, counsel for Belford readily – without objection or motion practice –

---

[7] Throughout the case, although counsel deemed some of the information provided by Belford to be suspicious, counsel was ethically required to give the benefit of the doubt to its client. *See* Comment to Michigan Rule of Professional Conduct 3.3. In fact, many representations by Belford turned out to be true and verifiable.

[8] Rule 11(d) cautions that Rule 11 cannot be used to sanction conduct during discovery: "this rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Rule 11(d). Nor are oral statements made by counsel subject to Rule 11, which applies only to written documents. *See, e.g.*, *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002) ("Rule 11 sanctions are limited to 'paper[s]' signed in violation of the rule. Conduct in depositions, discovery meetings of counsel, oral representations at hearings, and behavior in prior proceedings do not fall within the ambit of Rule 11.").

[9] This was before the Court conducted a scheduling conference which was set for February 7, 2011 (*see* Docket No. 107).

provided the address of Belford's office via email, in order for Plaintiffs to conduct the inspection. Plaintiffs conducted the inspection approximately three days later. On January 31, 2011, Plaintiffs filed a motion to compel on various issues, including a request to compel the inspection. The Miller Law Firm was surprised by this last request because it believed the inspection had been completed. In its response papers, The Miller Law Firm notified the Court that it believed the inspection had been completed, and referred to the location as Belford's "offices". (Docket No. 114, Response dated February 17, 2011). In its Response, counsel did not say there was a school building. At the hearing on March 9, counsel for Plaintiff detailed for the Court the results of its first inspection – i.e., that there were no classrooms and no school building. The Miller Law Firm did not dispute this; instead, it reaffirmed that the address was an "office", and it consented to a second inspection by Plaintiffs. It also stipulated to an order compelling the inspection of Belford's "physical location at The Century Tower Building, 4 Floor, Suite 1, Via Ricardo J. Alfaro" in Panama. (Docket No. 118). The Miller Law Firm thereafter sent a letter to deter Plaintiffs from incurring the cost of a further inspection, confirming what Plaintiffs already knew, *i.e.*, that there was no physical campus and no classrooms. (**Ex. 6**, March 23, 2011 Letter, at 2, emphasis added).

One would expect that if the facts in this letter surprised Plaintiffs—and if this was, in fact, a material issue—they might immediately file a Rule 11 motion or otherwise notify counsel and the Court that they had previously been misled about a critical fact. Their actual reaction is telling – they proceeded with the second inspection as if nothing had happened.

### C. The Nature of Sanctions Available

The Miller Law Firm submits that sanctions are not appropriate here, and that its actions do not reflect conduct akin to a contempt. If the Court finds otherwise, the firm respectfully notes that any written opinion could have extremely severe consequences for the firm and its attorneys,

9

creating permanent damage to the firm's reputation. Rule 11 "instructs courts to impose the 'least severe sanction adequate' to deter the offender." *Palazzolo v. Benson*, 1996 WL 156699, at *2 (6th Cir. 1996). This "requires the district court to consider, where appropriate, nonmonetary sanctions, including reprimand." *Palazzolo*, at *2. *See also Grider v. Keystone Health Plan Central, Inc*., 580 F.3d 119, 145-46 (3rd Cir. 2009) ("[w]hat is appropriate may be a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances.") (internal citations and quotations omitted).

Notably, "the [1993 Amendment to Rule 11] now makes the imposition of sanctions for violations discretionary, rather than mandatory." *Ridder v. City of Springfield*, 109 F.3d 288, 293-94 (6th Cir. 1997). Thus, even where a party commits a violation of Rule 11, courts retain the discretion to decline to award sanctions. *See, e.g., Kinney v. County of Hennepin*, 2002 WL 31163092, at *4 (D.Minn. 2002) ("Upon consideration of the respective arguments, the Court concludes that, even if a violation of Rule 11 did occur, the Court declines to award sanctions.").[10]

        Respectfully submitted,

        **FINK + ASSOCIATES LAW**
        Attorneys for The Miller Law Firm, only

By:    /s/ David H. Fink
        David H. Fink (P28235)
        100 West Long Lake Road; Suite111
        Bloomfield Hills, Michigan 48304
        (248) 971-2500
        dfink@finkandassociateslaw.com

---

[10] The Advisory Committee Notes to the 1993 Amendment twice indicate that a court need not impose a sanction even if the court finds a violation of Rule 11: ("Whether a violation has occurred and what sanctions, **if any**, to impose for a violation are matters committed to the discretion of the trial court…" and "[C]orrective action…should be taken into account in deciding what—**if any**—sanction to impose if…the court concludes that a violation has occurred.")

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2011, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will automatically send notification of such filing to all attorneys of record registered for electronic filing.

          Respectfully submitted,

          **FINK + ASSOCIATES LAW**
          Attorneys for The Miller Law Firm, only

By:    /s/ David H. Fink
       David H. Fink (P28235)
       100 West Long Lake Road; Suite111
       Bloomfield Hills, Michigan 48304
       (248) 971-2500
       dfink@finkandassociateslaw.com